UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VALENCIA SMALL, | ) No. CV 10-02685-VBK |
| | ) |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

|     |     |                                                                 |
| --- | --- | --------------------------------------------------------------- |
|     |     | considered Plaintiff's mental impairment and limitations (JS at 6); and |
|     | 2.  | Whether the ALJ properly found Plaintiff could perform a significant number of jobs as required in competitive employment (JS at 25). |

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY CONSIDERED PLAINTIFF'S**

**MENTAL IMPAIRMENT AND LIMITATIONS**

Plaintiff asserts that she has been diagnosed with paranoid schizophrenia by her treating psychiatrist, Dr. Puglisi. Relying upon functional assessments made by Dr. Puglisi at two different times in 2008 (AT 240-47, 281-86), she asserts that her impairments fulfill the requirements of Listing 12.03, parts A and B. For the reasons to be set forth, the Court agrees that the ALJ properly concluded that Plaintiff does not meet a Listing, nor is she disabled due to any mental impairment.

**A.   The ALJ's Decision**.

Following a hearing which occurred on December 1, 2008 (AR 28-70), at which Plaintiff was represented by the same attorney who now represents her in this litigation, and at which testimony was taken both from Plaintiff and a Medical Expert ("ME"), the ALJ issued an unfavorable decision. (AR 10-23.) In that decision, the ALJ

summarized the evidence concerning Plaintiff's mental impairment.

First, the ALJ noted that on May 18, 2007, at the request of the Department of Social Services, Plaintiff received a complete psychiatric evaluation ("CE") from Dr. Simonian. (AR 16-17, 208-12.) Dr. Simonian took a history from Plaintiff, who indicated that she has been hearing voices, for which she is on medication, for about four or five months. Plaintiff started seeing a psychiatrist three months ago, and is going to Augusta Hawkins Hospital where she is receiving medication for her psychiatric condition. (AR 16, 209.) Dr. Simonian performed a mental status examination (AR 210-11), which revealed no major disorder of speech; generally coherent thought processes; full range and appropriate affect; slightly guarded mood; no delusional thinking. (AR 210.) Dr. Simonian concluded, however, that Plaintiff was able to comprehend questions and respond to them appropriately, but at times "she was selectively not giving answers to questions." (Id.) Dr. Simonian felt that Plaintiff was "generally evasive to many questions that were asked." (AR 211.) In asking Plaintiff to perform arithmetic calculations, Dr. Simonian "strongly suspected that [Plaintiff] was not cooperating, and was producing facticious symptoms." (Id.) He diagnosed Plaintiff on Axis I with malingering. (Id.) He also diagnosed her with personality disorder, NOS, with antisocial personality features. (Id.)

The ALJ reviewed and summarized ongoing mental health treatment that Plaintiff had received from Morongo Basin. (AR 17.) He noted that Plaintiff had received various forms of treatment for her allegedly disabling symptoms, but that the treatment has been "generally successful in controlling those symptoms." (AR 17.) His review of records from Morongo Basin of January 11, 2008 indicated

3

that Plaintiff had good compliance with medications and that they were working a little. (Id.)  In March 2008, the ALJ noted that Plaintiff reported she was sleeping better although she still cried frequently and had a poor appetite.  In May 2008, the ALJ noted that Morongo Basin reported that Plaintiff was feeling less paranoid and a little better, and that she had good compliance with medications. (Id.)  In June 2008, the ALJ noted that Plaintiff continued to show improvement during the period of adjudication, that she maintained appropriate behavior and reported hearing no voices.  She had good compliance with medications and was scheduled for followup.  In August 2008, Morongo Basin reported that Plaintiff stated she had less anger and there was a decrease in hearing voices, with an increase in her appetite.  In October 2008, Morongo Basin indicated that Plaintiff had been without medications for a few days and reported voices and irritability.  The ALJ noted that "this suggests that the [Plaintiff's] medications are effective in controlling her auditory hallucinations and irritability." (Id.)

The ALJ extensively summarized the findings of Plaintiff's treating psychiatrist, Dr. Puglisi, who had treated Plaintiff since 2007. (AR 19-020.)  Dr. Puglisi assessed moderate limitations in activities of daily living, marked limitations in maintaining social functioning, and extreme difficulties in maintaining concentration, persistence or pace.  He found extreme episodes of deterioration or decompensation in work related or other situations.  He found a marked limitation in her ability to remember locations and work-like procedures, to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain regular

4

attendance; to work in coordination with or proximity to others without being distracted; to make simple work-related decisions; to complete a normal work day and work week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. Similar restrictions were found with regard to Plaintiff's ability to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; and to tolerate stress in an ordinary work situation. Dr. Puglisi found Plaintiff to be moderately limited in her ability to understand, remember, and carry out short and simple instructions; to sustain an ordinary routine without special supervision; to accept instructions and respond appropriately to criticisms from supervisors; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; and in her ability to set realistic goals or make plans independently of others. (AR 19, 240-47.)

The ALJ noted that Dr. Puglisi had found similar functional restrictions in a November 25, 2008 report. (AR 19, 281-88.)

Noting that in the hierarchy of opinions, that of a treating physician is entitled to special significance, the ALJ nevertheless depreciated the significance of Dr. Puglisi's opinions and afforded them no significant weight, as he found they conflicted with the substantial evidence of record which documented less severe limitations. (AR 20.) Further, the ALJ cited the testimony of the ME that Dr. Puglisi failed to provide evidence or standard descriptions

to support his observations of Plaintiff's mental symptoms. (AR 20, citing testimony at AR 45-56.)

The ALJ assigned "significant weight" to the report of Dr. Simonian. (AR 16-17, 20.) The ALJ noted Dr. Simonian's discounting of Plaintiff's reported delusional thinking (AR 210-11), and his conclusions that Plaintiff was not cooperative in the examination, and was strongly suspected of producing factitious symptoms. It was noted that Dr. Simonian diagnosed malingering and personality disorder, NOS. (Id.)

The ALJ heavily relied upon the testimony of the ME, who had examined all of the records, and in fact, observed and examined Plaintiff at the ALJ hearing itself. As noted in the Decision, the ME assessed that Plaintiff had mild limitations in activities of daily living; mild to moderate limitations in maintaining social functioning; mild limitations in her capacity to maintain concentration, persistence and pace; and no episodes of decompensation. (AR 47.) Thus, the ME assessed that Plaintiff would be limited to moderately complex tasks in a repetitive setting, that she could have normal contact with supervisors and coworkers, and could do object oriented work, but should not perform safety operations or do fast raped-paced assembly line work, nor work which involved intense interaction with the public. (Id.)

Finally, the ALJ noted and assessed weight to the Psychiatric Review Technique Form ("PRTF"), completed by non-examining psychiatrist Dr. Tasjian. (AR 18-19, 218-28.) Dr. Tasjian found mild limitations in activities of daily living; maintaining social functioning; and maintaining concentration, persistence or pace. (AR 226.) The ALJ found that this opinion was supported by the medical

evidence of record. (AR 18-19.)

The ALJ also made credibility findings, which Plaintiff does not challenge. He assessed that her assertions concerning her impairments were not considered fully credible in light of her unremarkable mental status examinations, the effectiveness of medications, and an inconsistent history she had provided concerning her drug use, in addition to the suspicion by Dr. Simonian that Plaintiff had produced factitious symptoms and was malingering. The ALJ noted that at the hearing, Plaintiff had no difficulties answering and understanding questions posed to her, and gave logical responses not consistent with active psychosis. (AR 21.)

**B. Applicable Law.**

**1. Mental Impairments.**

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to,

chronic mental disorders, structured settings, medication and other treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

8

which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses (see Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (See 20

C.F.R. Part 4, subpart p, App. 1.) The discussion in Listing 12.00, "Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.
>
> In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

### 2. **Evaluation of Medical Opinions**.

The Ninth Circuit has repeatedly enunciated clear standards to guide the Commissioner in the evaluation of the opinion of a treating physician. For example, in <u>Magallanes v. Bowen</u>, the court held that,

> "We afford greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.' <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987)(<u>Sprague</u>). The treating physician's opinion is not, however, necessarily conclusive as to either a physical

10

1  condition or the ultimate issue of disability. Rodriquez v.
2  Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir.
3  1989)(Rodriquez)  The ALJ may disregard the treating
4  physician's opinion whether or not that opinion is
5  contradicted. See id.; Cotton v. Bowen, 799 F.2d 1403, 1408
6  (9th Cir. 1986)(Cotton)."
7 (881 F.2d 747, 751)

9  The court in Magallanes continued that,
10     "To reject the opinion of a treating physician which
11  conflicts with that of an examining physician, the ALJ must
12  ''make findings setting forth specific, legitimate reasons
13  for doing so that are based on substantial evidence in the
14  record.''  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.
15  1987)(Winans), quoting Spraque, 812 F.2d at 1230; see also
16  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)(Murray)
17  (adopting this rule).  'The ALJ can meet this burden by
18  setting out a detailed and thorough summary of the facts and
19  conflicting clinical evidence, stating his interpretation
20  thereof, and making findings.' Cotton, 799 F.2d at 1408."
21 (881 F.2d 747, 751)

23  This clearly articulated rule, set forth by the Circuit in its
24 Opinions in Magallanes and Cotton, has been often cited in later
25 decisions. (See, Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.
26 1995): "The ALJ may reject the opinion only if she provides clear and
27 convincing reasons that are supported by the record as a whole.";
28 Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995): "Even if the

11

1 treating doctor's opinion is contradicted by another doctor, the
2 Commissioner may not reject this opinion without providing 'specific
3 and legitimate reasons' supported by substantial evidence in the
4 record for so doing." (Citation omitted)).

5 Moreover, the Ninth Circuit has established specific requirements
6 in situations where the ALJ (as in this case) rejects the opinions of
7 treating physicians in favor of the opinions of non-treating, non-
8 examining, testifying medical experts. The rule is succinctly stated
9 in Morgan v. Apfel, 169 F.3d 595, 602 (9th Cir. 1999):

> "The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician. (citations omitted) In Gallant [Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)], we determined that 'the report of [a] nontreating, nonexamining physician, combined with the ALJ's own observation of [the] claimant's demeanor at the hearing,' did not constitute substantial evidence and, therefore, did not support the Commissioner's rejection of the examining physician's opinion that the claimant was disabled. Gallant, 753 F.2d at 1456. In Pitzer [Pitzer v. Sullivan, 908 F.2d 502 (9th Cir. 1990)], we held that the nonexamining physician's opinion 'with nothing more' did not constitute substantial evidence.
>
> But we have consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of the nontreating, nonexamining medical advisor. [citations omitted] In Magallanes [Magallanes v. Bowen, 881 F.2d 747

1  (9th Cir. 1989)], evidence that supported the ALJ's
2  determination included, among other things, testimony from
3  the claimant that conflicted with her treating physician's
4  opinion." [citation omitted]
5 (169 F.3d at 602)

7  Also instructive is the Ninth Circuit's discussion of this issue
8 in Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995):
9  "Where the opinion of the claimant's treating physician
10 is contradicted, and the opinion of a nontreating source is
11 based on independent clinical findings that differ from
12 those of the treating physician, the opinion of the
13 nontreating source may itself be substantial evidence; it is
14 then solely the province of the ALJ to resolve the conflict.
15 Magallanes, 881 F.2d at 751. Where, on the other hand, a
16 nontreating source's opinion contradicts that of the
17 treating physician but is not based on independent clinical
18 findings, or rests on clinical findings also considered by
19 the treating physician, the opinion of the treating
20 physician may be rejected only in the ALJ gives specific,
21 legitimate reasons for doing so that are based on
22 substantial evidence in the record. Id. at 751, 755. See
23 Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993)
24 (applying test where ALJ relied on contradictory opinion of
25 nonexamining medical advisor)."
26 (53 F.3d at 1041.)
27 //
28 //

**ANALYSIS**

While Plaintiff attaches great weight to the opinion of her treating psychiatrist, Dr. Puglisi, the Court does not view the ALJ's depreciation of Dr. Puglisi's opinion as unreasonable, because, in fact, much of his opinion was based on subjective evidence, and his reports were largely conclusory and unsupported. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). Moreover, there was extensive testimony by the ME at the hearing concerning Dr. Puglisi's findings, which largely detracted from their validity. The ME specifically testified that Dr. Puglisi failed to provide evidence or standard descriptions to support his observations and conclusions as to Plaintiff's mental condition. This factor is supported in the regulations. See 20 C.F.R. §404.1527(e)(2)(ii).

In addition, while Plaintiff claims that Dr. Puglisi's findings are more consistent with the record than inconsistent, this does not appear to be the case. As noted, Dr. Puglisi's conclusions were substantially disagreed with by Dr. Simonian, Dr. Tasjian, and the ME. Moreover, the Court cannot disagree that the progress reports from Morongo Basin, to the extent they do not seem to rely upon Plaintiff's subjective complaints, do not support the extreme functional assessments of disability rendered by Dr. Puglisi. As observed by the ME, with the type of marked limitations assessed by Dr. Puglisi, a person cannot be maintained with once-a-month visits to a mental health center. (AR 56.)

For the same reason that the Court upholds the ALJ's assessment of Plaintiff's medical condition, it also finds that the ALJ properly rejected the contention that Plaintiff met one of the Listings. It

14

1  is, of course, Plaintiff's burden to demonstrate that she meets each
2  required characteristic of a Listing. See Bowen v. Yuckert, 482 U.S.
3  137, 153 (1987); 20 C.F.R. §404.1526; Tackett v. Apfel, 180 F.3d 1094,
4  1099 (9th Cir. 1999). Plaintiff has failed to demonstrate that she had
5  all the requisite medical criteria in the Listing. See 20 C.F.R.
6  §416.925(d). The ME further testified that Plaintiff did not meet or
7  equal any Listing. (AR 71.)

8  Because the Court has rejected Plaintiff's contention that Dr.
9  Puglisi's functional limitations should have been sustained by the
10 ALJ, her second issue must also fail. That is, the Court concludes
11 that the ALJ posed a proper hypothetical to the vocational expert
12 ("VE") which did not include those limitations assessed by Dr.
13 Puglisi. The limitations assessed by Dr. Puglisi were not sustained
14 by the ALJ, and this Court has found that the ALJ did not err in doing
15 so. Consequently, it cannot be contended that the hypothetical
16 questions posed to the VE failed to include all of Plaintiff's found
17 limitations. See Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir.
18 1995).

19 The decision of the ALJ will be affirmed. The Complaint will be
20 dismissed with prejudice.

21 **IT IS SO ORDERED.**

23 DATED: February 9, 2011            /s/
                                      VICTOR B. KENTON
24                                    UNITED STATES MAGISTRATE JUDGE

15